UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARL W. STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 03-1404 (RCL) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**FILED**

JUL 13 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

This matter is before the Court on defendant's amended motion for summary judgment. Having considered the motion, plaintiff's opposition, and the entire record of this case, the Court will grant summary judgment for defendant.

### I. BACKGROUND

The material facts of this case are not in dispute.[1] On or about August 26, 2002, plaintiff sought medical care at the Ambulatory Evaluation Clinic ("AEC") of the Veterans Affairs Medical Center in Northwest Washington, D.C. A physician treated plaintiff and discharged him in the early morning hours of August 26, 2002. Def.'s Mot., Ex. 2 (Voluntary Witness Statement of Ikemba Iweala) & Ex. 3 (SF-95). When plaintiff refused to leave the AEC waiting room, staff summoned Veterans Affairs police. Sgt. Wills, Cpl. Drew, and Cpl. Nieves, all of whom were wearing uniforms and badges,

---

[1] Because plaintiff did not rebut the factual assertions in defendant's original and amended summary judgment motions, the Court treats them as conceded.

reported to the AEC.[2]  *Id.*, Ex. 5 ("Wills Decl."), ¶ 3, Ex. 6 ("Drew Decl."), ¶ 3 & Ex. 7 ("Nieves Decl."), ¶ 3.  The officers spoke with the treating physician, and verified that plaintiff had been discharged.  Wills Decl., ¶ 4.  The officers told plaintiff that he could not stay in the waiting room after discharge, and notified plaintiff that his refusal to leave may result in his arrest and removal.  *Id.*  The officers asked plaintiff to leave several times, hoping that plaintiff would leave voluntarily.  Drew Decl. ¶ 5; Nieves Decl., ¶ 5.  Plaintiff repeatedly refused to leave.  Wills Decl., ¶ 4.  "The more [plaintiff] was ask[ed] to leave the more he became hostile and argumentative."  Def.'s Mot., Ex. 2 (Voluntary Witness Statement of Mary T. Greene).  Two officers "approached [plaintiff] from either side and lifted him out of the chair by grabbing him at the armpit and elbow.  When [they] did this, [plaintiff] just went limp – he did not resist, but he made himself into a dead-weight."  Drew Decl., ¶ 5.  Sgt. Wills "grabbed [plaintiff] by the belt so he did not fall."  Wills Decl., ¶ 4.  Plaintiff was handcuffed with his arms behind him.[3]  Drew Decl., ¶ 5.  Plaintiff "was not combative, but he did not cooperate and refused to walk out" of the AEC.  Wills Decl., ¶6.  The officers dragged plaintiff to the VA police holding area.  Wills Decl., ¶ 4; Nieves Decl., ¶ 6.

---

[2]    Sgt. Wills since has been promoted to Lieutenant.  Wills Decl., ¶ 1.  Cpl. Drew and Cpl. Nieves voluntarily resigned.  Drew Decl., ¶ 1; Nieves Decl., ¶ 1.

[3]    Cpl. Drew explained that the cuffs were "double locked" in order to "prevent the cuffs from closing any more if Mr. Stewart struggled as double locking keeps the cuffs in the same position, while single locking allows the cuffs to tighten more, which can cut off the circulation to the cuffed person's hands."  Drew Decl., ¶ 5.  Plaintiff was handcuffed "for his own protection as this would prevent him from swinging his arms at us and looking like he was attacking us."  *Id.*

Plaintiff was arrested for loitering. Wills Decl., ¶ 4. The officers identified plaintiff's personal property and placed it in containers that would accompany plaintiff upon his transfer to the Metropolitan Police Department's custody.[4] *Id.*, ¶ 5. Plaintiff kept his eyeglasses and driver's license with him.[5] *Id.*

The officers "used the minimum amount of force necessary to have [plaintiff] obey [] instructions and accompany [them] to the holding area. Wills Decl., ¶ 4. Plaintiff did not complain of any pain or injury while being taken to the VA holding area or while waiting for Metropolitan Police Department officers to transport him. Drew Decl., ¶ 9; Nieves Decl., ¶ 7.

Plaintiff brings this action against the United States under the Federal Tort Claims Act ("FTCA"), and demands damages for personal injuries allegedly suffered during his arrest.

## II. DISCUSSION

### A. *Standard of Review*

Summary judgment is granted to the movant if it has shown, when the facts are

---

[4] In accordance with VA regulations, the officers called the Metropolitan Police Department. Drew Decl., ¶ 7. Plaintiff refused to cooperate with the MPD officers, refused to answer their questions, and refused to walk to the police car. *Id.* The officers dragged plaintiff to the police car. Wills Decl., ¶ 6.

[5] It appears that plaintiff raises negligence claims for defendant's alleged loss of his eyeglasses and alleged breach of confidentiality of plaintiff's medical records. *See* Compl., Ex. (SF-95, Claim for Damage, Injury, or Death). These claims must fail. Plaintiff retained possession of his eyeglasses, and the police officers obtained no information about plaintiff's medical condition from hospital staff. *See* Wills Decl., ¶¶ 5, 7; Drew Decl., ¶ 10.

viewed in the light most favorable to the non-movant, that there are no genuine issues of material fact in dispute and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56(c). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).

### B. The Court will grant summary judgment for defendant.

Generally, the FTCA is a waiver of sovereign immunity, such that the United States consents to be sued in limited circumstances. *See, e.g., Tri-State Hospital Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003). The United States may be sued for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b)(1). The "United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. §2674. The government may assert any defense available to a private party in similar

circumstances. *See id.*; *see Lucas v. United States*, 443 F.Supp. 539, 543 (D.D.C. 1977) ("[S]tate or local law controls the disposition of all substantive tort aspects of the cause, including, *inter alia*, the issues of scope of employment, *respondeat superior*, and damages."), *aff'd*, 590 F.2d 356 (D.C. Cir. 1979) (table).

Although there are exceptions to the FCTA's waiver of sovereign immunity, it applies to the acts or omissions of federal law enforcement officers "arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process or malicious prosecution." 28 U.S.C. §2680(h); *see Townsend v. Carmel*, 494 F.Supp. 30, 37 (D.D.C. 1979) (finding that legislative history of Sec. 2680(h) "convincingly establishes that the government has waived its sovereign immunity defense when the employee acting within the scope of employment is a law enforcement official"). The term "law enforcement officer" for purposes of the FTCA includes "any officer of the United States who is empowered by law . . . to make arrests for violations of Federal law." *Id.* Veterans Affairs police officers are federal law enforcement officers for purposes of the FTCA. *See Celestine v. United States*, 841 F.2d 851, 853 (8th Cir. 1988) (holding that VA hospital security guards are VA police officers for purposes of FTCA). These officers are authorized to make arrests on Veterans Administration property for violations of federal law and regulations promulgated by the Secretary of Veterans Affairs. *See* 38 U.S.C. §902(a)(3). These regulations prohibit "unwarranted loitering, sleeping or assembly" on VA property, and authorize the arrest and removal of persons who "fail[] to leave the premises when so ordered." 38 C.F.R. §1.218(a); *see* Def.'s Amd. Mot. for

Summ. J. ("Def.'s Mot."), Ex. 8 (Medical Center Policy Memorandum No. 07-06, "Disposition of Unauthorized Persons Loitering, Sleeping or Assembling on VAMC Property").

The Court construes plaintiff's complaint as alleging that the VA police officers, without a warrant, falsely arrested and imprisoned him. Under District of Columbia law, a police officer may justify an arrest by demonstrating that he believed, in good faith, that his conduct was lawful, and that this belief was reasonable. *Amons v. District of Columbia*, 231 F.Supp.2d 109, 116-17 (D.D.C. 2002) (citing *Weishapl v. Sowers*, 771 A.2d 1014, 1020 (D.C. 2001)). The fact finder must consider evidence of the officer's good faith from the officer's point of view. *Weishapl v. Sowers*, 771 A.2d at 1021 (internal quotation marks omitted) (citing *District of Columbia v. Murphy*, 631 A.2d 34, 36-37 (D.C.), *aff'd on reh'g*, 635 A.2d 929 (D.C. 1993)).

Under District of Columbia law, "probable cause to effectuate an arrest is a defense to a law enforcement officer for the torts of assault, battery, and false arrest." *Lucas v. United States*, 443 F.Supp. at 543; *see Wilcox v. United States*, 509 F.Supp. 381, 385 (D.D.C. 1981). Having carefully reviewed the officers' declarations, the Court concludes that the officers had probable cause to believe that plaintiff's arrest and detention were lawful. Their declarations sufficiently establish their good faith belief that their conduct was lawful and that their belief was reasonable under the circumstances described therein. Thus, defendant defeats plaintiff's false arrest claim, because the United States as an employer sued under a *respondeat superior* theory

may assert any defense available to the individual law enforcement officers in its employ.[6] *See Lucas v. United States*, 443 F.Supp. at 543. To the extent that plaintiff raises claims for assault and battery, these claims, too, must fail. Such claims are inextricably intertwined with the claims of false arrest and false imprisonment; they do not constitute independent tortious acts unrelated to the arrest. *See Wilcox v. United States*, 509 F.Supp. at 386.

### III. CONCLUSION

For the reasons stated herein, the Court will grant defendant's summary judgment motion. An Order consistent with this Memorandum Opinion will be issued separately on this same date.

*(signature)*
ROYCE C. LAMBERTH
United States District Judge

DATE: 7/12/05

---

[6] Defendant argues that the Veterans Affairs police officers are entitled to qualified immunity, such that both the officers and the United States are immune from suit entirely. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *see Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (officer is entitled to qualified immunity even if he "reasonably but mistakenly conclude[s] that probable cause is present"). Defendant's reliance on such a defense is misplaced. Qualified immunity is a defense available to individuals. None of the officers is a party to this action. The United States is the only named party defendant, and the FTCA is the only statutory basis for this action.